UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-11648-GAO

JOY GONCALVES,
Plaintiff,

v.

PLYMOUTH COUNTY and PLYMOUTH COUNTY SHERIFF'S DEPARTMENT,
Defendants.

OPINION AND ORDER
August 11, 2010

O'TOOLE, D.J.

Joy Goncalves alleges she was denied promotions to four different positions by her employer, the Plymouth County Sheriff's Department ("PCSD"),[1] based on her gender, race, and national origin in violation of Massachusetts General Laws chapter 151B ("Chapter 151B") and 42 U.S.C. § 2000e, and her age in violation of Chapter 151B and 29 U.S.C. § 623.

## I.  Background

Goncalves is a forty-nine year old Cape Verdean female who also self-identifies as black. She has worked as a Budget Administrator for the PCSD since February 2001. During her employment, PCSD has accommodated Goncalves's schedule as a youth sports coach by allowing her to work between 6 a.m. and 2 p.m. rather than the standard 8 a.m. to 4 p.m. shift.

Between 2004 and 2008, Goncalves applied for, but was denied, promotion to four different positions within the PCSD. She claims the denials were the result of unlawful discrimination. Only her claims with respect to two positions, Systems Analyst and Database

---

[1] All claims against Plymouth County were voluntarily dismissed. See Goncalves v. Plymouth Cnty., No. 08-11648 (D. Mass. Apr. 29, 2010) (dkt. no. 28).

Administrator (the "IT positions"), are challenged here. The parties agree that any discrimination claims with respect to two other positions are time-barred.

Goncalves applied for the IT positions in February 2008. The IT positions each required an associate's degree in a computer-related field and three years of relevant work experience. Nine applicants, including Goncalves, were interviewed for both positions. Among the applicants interviewed were Britney Johnson, a white female, and Matthew Blais, a white male. Both Johnson and Blais are younger than Goncalves. The interviews were conducted by Human Resources Director Paul Lawton, Human Resources Manager Mark Gabriel, and Deputy Director of IT Tara Cruza. Johnson was interviewed for the IT positions even though she did not satisfy the prerequisite of an associate's degree because she had relevant work experience with Mac computers and web design. Blais not only had the relevant work experience for the IT positions, having last worked for a private company setting up servers, he also had the requisite professional degree. Unlike Johnson and Blais, Goncalves did not have any programming experience or networking training, although she did satisfy the degree requirement. Goncalves had last worked in a computer-related field eleven years prior to her applying for the IT positions, and her only experience in the field was with an outdated DOS-based system.

In the interview process, Lawton, Cruza, and Gabriel assigned each candidate a letter grade between "A" and "C-," rating their impression of that candidate's interview performance. Goncalves was rated "C" by Cruza and "B-" by Lawton; Johnson was rated "A" by Cruza and "A-" by Gabriel; Blais was rated "B+" by Cruza and not less than a "B" from Lawton.[2] Gabriel apparently did not give a letter grade to either Goncalves or Blais.

---

[2] Lawton's interview report for Johnson is not in the record. The record is unclear on whether Lawton rated Blais with an "A," "B+," or "B."

After the initial interviews, a practical exam was designed and administered to candidates to test their IT knowledge. Johnson, Blais, and Goncalves, along with two other candidates, were invited to take the exam. Johnson and Blais performed better than Goncalves on the exam: Blais scored the highest of all candidates with 18 points out of a possible 24, Johnson scored in the top three with 15, and Goncalves received one of the lowest scores with 10.

Lawton, Cruza, and Gabriel evaluated the final five candidates based on their interview performances and exam scores. Cruza noted that Goncalves became angry in her interview when she learned that the IT schedule required an 8 a.m. to 4 p.m. schedule that could not be changed to accommodate her current 6 a.m. to 2 p.m. schedule. Neither Johnson nor Blais shared this scheduling restriction. Cruza also noted that Johnson was a family friend of a County Commissioner. However, Cruza testified at her deposition that this connection did not influence her recommendation. Johnson was ultimately hired for the Systems Analyst position and Blais was hired for the Database Administrator position.

## II.   Discussion

Where, as here, an employee has only circumstantial evidence of discrimination, the McDonnell Douglas burden-shifting framework applies.[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800 (1973). Under this framework, the employee bears the initial burden of establishing a prima facie case of employment discrimination. Id. at 802. The presumption of discrimination created by the prima facie case can only be rebutted by the employer with a nondiscriminatory justification for its actions. Id. If the employer carries this burden of production, then the employee can rebut the nondiscriminatory justification by showing that the justification is mere pretext masking discriminatory animus. Id. at 804.

---

[3] The McDonnell Douglas framework applies to both Title VII and Chapter 151B claims, Quinones v. Buick, 436 F.3d 284, 289 n.1 (1st Cir. 2006), and to federal age discrimination claims brought under 29 U.S.C. § 623, Velez v. Thermo King de P.R., Inc., 585 F.3d 441, 447 n.2 (1st Cir. 2009).

A.     Prima Facie Case

To state a claim for failure-to-promote, Goncalves must show that (1) she is a member of a protected class; (2) she was qualified for and applied for an available position; (3) she was denied the promotion; and (4) someone outside of her protected class, but possessing similar qualifications, filled the position. Ingram v. Brink's Inc., 414 F.3d 222, 230 (1st Cir. 2005). The parties agree that Goncalves meets the first and third elements, but dispute whether she meets the second and fourth elements.

Goncalves has failed to establish that she was qualified for the IT positions. Whether a plaintiff is qualified for a position depends on whether she meets the minimum job qualifications. Gu v. Boston Police Dep't, 312 F.3d 6, 11 (1st Cir. 2002). The Systems Analyst position, and apparently the Data Administrator position, required three or more years as an intranet/internet/user interface developer with experience developing database-driven intranet/internet applications using IIS, MTX, COM, ASP, SQL Server (version 7.0 or higher), Access, Visual Basic, Visual InterDev, and JavaScript. Goncalves did not have any of this experience, having only worked with an outdated DOS-based system. She lacked programming experience and network training.

Nor was Goncalves similarly situated to the hired candidates in terms of her work experience, interview performance, or test score. Candidates are similarly situated if they share "roughly equivalent job qualifications." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991). Similarly situated candidates must be similar "in material respects." Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996). Here, Goncalves did not have any of the required work experience that Johnson and Blais had. Moreover, Goncalves performed poorly during her interviews relative to Johnson and Blais. Goncalves was rated with a "C" and "B-"

while Johnson was rated in the "A" range, and Blais did not receive a grade lower than a "B." It is true that the Court is not a "super personnel department[]" charged with weighing subjective evidence. Mesnick, 950 F.2d at 825. But the Court may look to objective measures of a candidate's performance, such as test scores, to determine whether she is qualified or similarly situated to other qualified candidates for a position. See Masters v. City of East Point, 313 Fed. Appx. 239, 240-41 (11th Cir. 2009) (finding candidate was not qualified for a promotion or similarly situated with hired candidates because he received a relatively lower test score on a written practical exam). In this case, the practical exam scores reinforce the comparative results of the candidates' interview performances: Goncalves failed the exam while Johnson and Blais had among the three highest scores.

Because Goncalves was not qualified for the IT positions and was not similarly situated with the hired candidates, she has not carried her burden of making out a prima facie case. Summary judgment analysis ends at this stage if the employee, as here, fails to establish a prima facie case of discrimination. Ingram, 414 F.3d at 230.

For the sake of completeness, however, Goncalves's other arguments are also addressed.

B.      Nondiscriminatory Justification

Only a nondiscriminatory justification for the employer's actions can rebut the presumption of discrimination created by the employee's prima facie case. McDonnell Douglas, 411 U.S. at 802. Hiring the most qualified applicant for a position is, of course, a legitimate nondiscriminatory justification for a hiring decision. Gu, 312 F.3d at 12. Here, PCSD's proffered reason for its hiring decisions is nondiscriminatory: Johnson and Blais were better qualified than Goncalves for the two IT positions. Johnson and Blais had everything Goncalves lacked: relevant work experience, higher test scores, and superior interview performances.

C.     Pretext

If the employer provides a nondiscriminatory reason for its actions, then the burden shifts back to the employee to show that the employer's proffered reason was a pretext masking discriminatory animus. McDonnell Douglas, 411 U.S. at 804. To carry this burden, Goncalves must provide specific facts which would allow a jury to infer that the PCSD's proffered reason is not only a pretext, but also a pretext for discrimination. See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990).

Goncalves has failed to show that the PCSD's proffered reason was a pretext for discrimination. Goncalves contends that the PCSD's proffered reason was pretextual because it selected the candidates it eventually hired before the interview process was completed, it failed to apply the minimum qualification criteria to Johnson, it hired Johnson because of her friendship with the County Commissioner, it created and implemented a practical exam after candidates were interviewed for the IT positions, and it allowed Cruza to participate in the selection process even though Cruza disliked Goncalves. From this, Goncalves suggests that the true reason behind the PCSD's decisions not to give her the promotions was discriminatory animus.

However, Goncalves offers only a theory and no evidence. See Mesnick, 950 F.2d at 824 (recognizing that while a "smoking gun" is not required, the employee must offer some circumstantial evidence of discrimination, such as evidence of an employer's disparaging comments made to members of the protected class, disparate treatment of other members of the protected class, or statistical evidence of an employer's disparate treatment in hiring practices); see also Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998) (noting that employee establishes pretext by showing contradictions or inconsistencies with the employer's

6

proffered reason). Goncalves has perhaps offered some modest evidence that PCSD's true reason for not promoting her was cronyism, personal animosity, or sloppy hiring practices, but she has not shown that it was a pretext for unlawful discrimination.

### III.    Conclusion

For the foregoing reasons, the defendant's Motion for Summary Judgment (dkt. no. 29) is GRANTED. Judgment shall enter for the defendant.

It is SO ORDERED.

    /s/ George A. O'Toole, Jr.
United States District Judge